UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Crim. No. 3:14cr141 (JBA) |
| BRANDEN HUERTAS | April 1, 2015 |

RULING ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Branden Huertas, charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) and one count of unlawful possession of a firearm by a person subject to a protective order, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2), brings this motion [Doc. # 37] for an order of suppression of the firearm upon which the charges against him are premised and related items seized from the bag in which the firearm was found. An evidentiary hearing was held on March 16, 2015. For the following reasons, Mr. Huertas's motion is denied.

I.  Background

Bridgeport police officer Tom Lattanzio testified to the following facts at the suppression hearing. On the evening of May 13, 2014, Officer Lattanzio was parking his patrol car in front of the police department located at 300 Congress Street in Bridgeport, Connecticut when a woman pulled her vehicle up next to his. Through her open window, the woman asked Officer Lattanzio what she needed to do in order to change an already completed police report. Officer Lattanzio explained the procedure, and then the woman began to drive away. However, after she drove five or six feet, she backed up again and called to the officer through her open window, telling him that there was a man carrying a

gun in a bag, that she had felt the gun, and the man's name was Branden. She pointed down the street and said "he's right there," but Officer Lattanzio did not see anyone. The woman did not provide her name, driver's license, phone number, or address, and told the officer that she did not want to get involved. The officer noted that she seemed nervous. The conversation lasted only a few seconds and then the woman drove off.

Officer Lattanzio called in her plates, but they did not lend any clues as to her identity because the vehicle was registered to a male. The officer began traveling down Congress Street in the direction in which the woman had pointed, looking for the man with the gun. He turned onto Main Street, traveling toward Lumber Street. When he reached Lumber Street, he saw someone standing near the corner of Lumber Street and Housatonic Avenue, carrying a black bag "as if you would carry a lantern" in front of his body. Officer Lattanzio began to drive slowly (4 to 5 miles per hour) against traffic on Lumber Street toward the man, using his spotlight as a guide. The man remained in a fixed position.

As Officer Lattanzio approached the suspect, whom he identified at the hearing as Mr. Huertas, he rolled down his window and called out to the man: "What's going on? Are you okay? What happened with the girl? Did you have an argument or something like that?" Mr. Huertas remained still and looked at the officer. Officer Lattanzio testified that Mr. Huertas "spoke with him for a few seconds," but when Officer Lattanzio began to get out of his vehicle and inquire about what was in the bag Mr. Huertas was carrying, Mr. Huertas turned and fled. According to Officer Lattanzio, the whole encounter lasted less than a minute.

Officer Lattanzio and other officers in the area immediately began to pursue Mr. Huertas. He was arrested a short time later after having run across three lanes of a highway. Following Mr. Huertas's arrest, officers searched the route on which he had run and located his hat and a black-colored duffel bag containing a revolver and some personal effects. Mr. Huertas moves to suppress this evidence.

## II.     Discussion

Mr. Huertas contends that he was "illegally seized" when Officer Lattanzio approached him and questioned him and that but for that illegal seizure, officers would not have discovered the duffel bag and the firearm. Mr. Huertas thus argues that the gun was the fruit of an illegal seizure and should be suppressed.

The Fourth Amendment recognizes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "'[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,'" *and* either physical force has been employed, or where that is absent, the individual submits to the assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

According to Mr. Huertas, he was seized when Officer Lattanzio questioned him because Officer Lattanzio's actions led him reasonably to believe that he was not free to leave, and he submitted to Officer Lattanzio's authority by pausing before running and by beginning to answer the officer's questions. However, even if Mr. Huertas briefly stopped walking before he ran as he contends, given the totality of circumstances here, that brief

3

stop and verbal exchange did not constitute "submission" as it has been interpreted in this Circuit.

In order "to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for 'there is no seizure without actual submission.'" *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)); *see also United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) ("Even if Valentine paused for a few moments and gave his name, he did not submit in any realistic sense to the officers' show of authority, and therefore there was no seizure until Officer Woodard grabbed him."); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994) ("[The defendant] initially stopped, but he drove off quickly before Officer Hemphill even reached the car. Because [the defendant] did not submit to Hemphill's order, he was not seized."); *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994) ("Hernandez requests we find he submitted to authority and was seized, despite his subsequent flight, merely because he hesitated for a moment and made direct eye contact with Sadar. We decline to hold these actions sufficient to constitute submission to authority.").

At the suppression hearing, Defendant attempted to distinguish *Baldwin* on the grounds that it involved a car stop, which has traditionally been entitled to less Fourth Amendment protection than other kinds of stops. Defendant does not account for the fact that *Baldwin* merely applies a rule created by the Supreme Court in *Hodari D.*, 499 U.S. at 628, a case that involved a foot chase not a car stop. Neither the Supreme Court nor the Second Circuit has held that the definition of "actual submission" varies depending on whether the suspect is in a vehicle or on foot. Rather, the Second Circuit

has directed lower courts to examine the totality of the circumstances and determine whether the "nature of the interaction" demonstrates that the defendant's conduct amounted to actual submission to police authority. *See Baldwin*, 496 F.3d at 219. Here, as in *Baldwin*, the defendant's "conduct, all circumstances considered, amounted to evasion of police authority, not submission." *Id.*

Therefore, Mr. Huertas was not seized until he was arrested by police, at some point after he had abandoned the duffel bag and gun.[1] *See Hodari D.*, 499 U.S. at 629 (holding that because the defendant was not seized until he was arrested, "[t]he cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied."); *Swindle*, 407 F.3d at 572–73 (concluding that because "Swindle was not seized until the police physically apprehended him, . . . the drugs that [he] abandoned before being apprehended were . . . not the product of a Fourth Amendment seizure" and "did not have to be suppressed as the fruit of a poisonous tree."). The gun and other seized items were thus not the fruit of an unlawful seizure and should not be suppressed regardless of the reasonableness of Officer Lattanzio's initial questioning of Mr. Huertas.

---

[1] Although both the Government and Defendant focus their briefs on the reasonableness of the *Terry* stop, the Court does not reach that issue because it does not find that Mr. Huertas was seized before his arrest. *See United States v. Swindle*, 407 F.3d 562, 572–73 (2d Cir. 2005) (holding that even though the officer's *Terry* stop was unlawful, the drugs Swindle abandoned while officers pursued him were not the fruit of an illegal seizure because Swindle was not seized until he was arrested after fleeing).

## III.     Conclusion

For the foregoing reasons, Mr. Huertas's Motion [Doc. # 35] to Suppress is DENIED.

IT IS SO ORDERED.

\_\_\_\_\_/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of April, 2015.